Good afternoon and may it please the court. I wanted to just briefly review some of the highlighted facts here. Um, on March 23rd 2018 agents with the A. T. F. Approached Jose Diaz and inquired about Mr. Clary. Excuse me for interrupting. We've read the briefs and we're familiar with the facts. So if you go ahead and move to your legal points, of course, you can refer back to the facts as they relate to your specific points. But we don't need to go over the general background and history of the case. Okay, thank you, Your Honor. Um, I wanted to begin with the selective prosecution point. Um, on that issue, I have looked for a case any case similar to this one where a cease and desist letter had been issued by the A. T. F. And then there was a notwithstanding the fact that the person who signed the cease and desist letter complied with its terms. I have not found one, and I don't think the government has cited one. Um, so I think basically, Miss Diaz, uh, was placed in a position where she's unique. Um, she, as far as I can tell from the record here, complied with everything the A. T. F. Asked her to do and yet ended up getting prosecuted for crimes that antedated the date of the cease and desist letter. Um, so I think there's at least a prima facie case here that there's been a violation of her equal protection rights and that the government has treated her differently from everybody else. Um, now there may be a case out there, but I certainly haven't found it. Now, um, the government, uh, as indicated, I guess I've also provided for the court a citation to a G. A. O. Report, which shows that the government routinely uses these cease and desist desist letters as an alternative to the right of a defendant here in selective prosecution. You could start with the premise that the constitutional premise that the discretion to prosecute, uh, yes, is very wide and deep, whether to pursue or not to pursue. Um, why can't this just be viewed by the government? They're unfair as someone that's no longer cooperating with us. And so there's no reason not to prosecute him. Well, Your Honor, I think there are two reasons. First, uh, she's different from other defendants because she does have this letter from the government where there's at least an implicit commitment that they're not going to prosecute her for crimes that occurred prior to the date of the letter. Um, and and so I think the other point that that is really important here is that Sylvia, why is that? I can go with you with a and it wouldn't equally follow that implicit in that we continue cooperation. Well, that's what I was about to get to your honor. I don't think Sylvia is the person who refused cooperation, and I think she was in a position where she's married to this fellow Jose. The agents wanted Jose to participate in a sting, and he's the one that backed out. I'm not sure, based on this record that Sylvia had any indication that even Jose was even asked to do this, and she certainly wasn't asked by the A. T. F. To personally participate in the sting and didn't refuse any requests that they made. Actually, she had very little contact with them based on the review of the P. S. R. And so I don't think that it's fair to say that she refused cooperation. Um, now she did leave for Mexico rather than getting involved. Uh, rather than her husband getting involved in a sting operation, he took the family to Mexico. And, um, I think in this case, you know, he was nervous from the very beginning. He told the A. T. F. That look, I'm in a situation here where I'm afraid that I've been dealing with the cartel and that if I participate in this thing that my family's gonna be hurt. And at that point, the A. T. F. agents indicated that this might be, uh, a case where the witness protection program would be appropriate. That's how dangerous everyone thought this might be. So, you know, I think you could argue that Jose, uh, failed cooperate, but I don't think you can argue that Sylvia did. I think she just kind of went along with whatever Jose told her to. Now, I wanted to address, uh, the appeal waiver because that seems to be the government's primary point. Uh, I do think the government is more or less in its response indicated that it believes it could do exactly what happened here. Uh, prosecute Sylvia even for criminal acts that had occurred before. But it seems to me the government's argument is that they're doing that because she not to cooperate with the government. I disagree with that. I think that a person certainly doesn't have a right to obstruct justice. A person doesn't have a right, uh, to, uh, commit misprison of a felony. But if you're asked to cooperate in a sting operation, you don't have to do that. You know, they weren't under arrest here. They weren't under indictment here. They were given a cease and desist letter. They had every expectation that they wouldn't be prosecuted for anything they had done before. As long as they going forward, they did not get involved in these illegal gun transactions. Now, on the appeal waiver issue, uh, you know, there are a couple of points here. Number one. Uh, I think the ineffective assistance of counsel exception, um, maybe applicable here, and I am aware that the court rarely takes those up on direct appeal. But here we have a situation where there was a cease and desist letter referenced in the pre sentence report. Uh, apparently was never, uh, seen by defense lawyer at the trial level. And in my view, it at raised, uh, prima facie case that there was selected prosecution here, which would have been an absolute defense to the prosecution. Um, so in my view, that record shows at least some semblance of, uh, ineffective assistance. The letter should have been at least read. And in my judgment, they should that the lawyer should have followed up and created a what was in what was in the PSR about this arrangement? Well, uh, judging him on what they did is described in the PSR. The fact that the cease and desist letter existed that that had been signed by Jose and Sylvia at the request of the ATF agents. And so the letter itself apparently was never discovered below. Uh, what do you mean? I've never discovered that the the trial lawyer and indicated that he didn't have it from the government. The government indicated that it had produced it. I don't know. I don't know one way or another what happened with respect to that. But what I do know is that it's referenced in the pre sentence report and certainly should have been. Uh, the trial lawyer should have been aware of it prior to sentencing. Um, once made aware of that, I think selective prosecution becomes, uh, you know, on the radar and should have been followed up on. Um, Judge Godney and Dallas took this plea. I'm um, I wanted to, uh, briefly touch on, uh, vindictive prosecution. Now, frankly, I think that's a, uh, less compelling argument than, uh, selective prosecution, primarily because these vindictive prosecution cases seem to arise most of the time after the indictment has been filed and the I don't think it's as powerful as the selective prosecution claim, uh, particularly because this is a class of one. As far as I can tell, and under normal equal protection principles, um, there's at least one U. S. Supreme Court case that says you don't have to. You don't even have to show subjective ill if there's a class of one. And if these, uh, classifier and they, um, and the question is, is if, for example, uh, because it is selected that person to be prosecuted on the basis of race. I mean, that would be a, uh, knowledge of protection clause. But the selection criteria here, uh, is if you just approach an equal protection terms, uh, is certainly but nowhere near us a suspect sufficient to a suspect criteria. Um, and I have difficulties on a rational basis. That's the best equal protection analysis. Yes, Your right in the sense that there's not a protected class here. But I do think that she is singled out as one person in this class, as far as I can tell. And the case that indicates that the I've cited the case in a footnote in my brief that that applies. It's the it's the off case. Uh, village of Willow Brook versus I'm sorry, Olek 1 20 Supreme Court 10 73. That's a single class rational basis case where the court said if you actually got a single class, a single person class and, um, and that person shows that it's being treated in a discriminatory manner in the sense that treated differently from others that you don't even have to show subjective ill will. And there are many other cases that say that normal equal protection protection analysis is applicable to selective prosecution cases. So putting those together, I think that there's a fairly powerful case for selective prosecution here, and I know these air very rare. Um, and I know that the uh, you know, some discretion, some wide discretion in determining who to prosecute. But I think in this case, it's pretty clear they singled her Sylvia out primarily because Jose didn't do what the government wanted Jose to do, which is participate in this thing. Um, you know, I'd like to miss Diaz. His plea was voluntary and knowing. And, uh, the ray house seems to have changed the landscape a lot in 9 22 a six cases. Uh, and 9 22 g cases. Um, 9 22 g. It seems to me is actually a less compelling case for imposing the knowledge mens rea with respect to status than 9 22 a six because I think 9 22 a six. Um, there is a knowledge requirement in that statute. Um, but there's also a follow up a general statute, the one that the Supreme Court relied on in rehab, which makes that knowledge requirement applicable to all the elements of the offense. The court itself in rehab. Yes, the rehab itself might explain that they were they were not going beyond what the subsection that was then before it. In other words, it expressed it's another real caution there as to the reach of this because obviously this is quite a new um, advice that the court is taking, and they want they were very careful to point that out. Yes, I agree with that. And and they did indicate that that their analysis was confined to that one subsection of 9 22. However, it's pretty hard for me to see how status can be important. Knowledge with respect to well, the problem that you have there, Mr Clary, uh, is that the Supreme Court has repeatedly reminded us that if they're gonna extend their jurisprudence that they'll let us know and that otherwise we need to apply existing law. You certainly preserved the point. Uh, but but there's nothing that we can do about rehab, given that it doesn't really touch on the sections that are your honor. The only thing I would say is there's a there's a Fifth Circuit case that came out. I don't know if I have the site in front of me now. Uh, came out this year. I think it's the Needham case, which says even if you don't have, uh, authority that's controlling you, if you can argue by analogy without extending it too much, um, that that can also constitute plain error. Now, I don't know. I understand the court's point about Ray half. I agree that the Supreme Court did signal that it wasn't making a a decision beyond a six. But I do think, um, eight. I'm sorry. 9 22 G. But I do think here that, um, there's some reason to expect that the same and that would be hard for me to distinguish between the two. Okay. And your initial time has fired. Thank you. You save your 45 minutes for rebuttal. Thank you, Mr Bunch. Please. The court. Nicholas Bunch for the United States. Um, Diaz here presents a series of challenges to her conviction, her guilty plea conviction, none of which would have raised below and all a significant procedural hurdles before even getting to the merits of those questions. Um, to start with on vindictive and selective prosecution, these arguments are barred by the waiver of her appellate rights in her agreement. I'll call you back. Okay, thank you. Okay. Okay, go ahead, Mr Bunch. I apologize. Thank you, Your Honor. Um, the vindictive and selective prosecution arguments are barred by the appellate rights waiver in her plea agreement. She entered into that knowingly and voluntarily in the district court. It was found at the rearrangement. It's in the plea agreement, and these particular claims are covered by it. She tries to avoid that appellate waiver by pointing to the exceptions. And I think one of the takeaways of this afternoon's argument, especially as it relates to ineffective assistance of counsel, is that there is an undeveloped record as to vindictive or selective prosecution. And that's why these types of arguments are not going to be considered by this court in the first instance on a direct appeal. She is perfectly able to raise them later if she wants to, in the context of the 22 55, where a factual record can be made and pursued as to the reasons why her lawyer didn't pursue these claims. What is important here, though, is that this lawyer who handled this case of the district court entered her into a plea agreement, reached a plea agreement with the government that resulted in multiple counts that had larger statutory penalties attached to them being dismissed. The government agreed to reduce her potential exposure from 25 years down to five years. And as part of the plea agreement, the government agreed not to prosecute her for other conduct related to this much. But let me ask you, has the government at any time explained why I did, uh, you like to pursue this prosecution? Um, what is reason work? There is nothing in this record that establishes why this case was brought, as opposed to any other case involving false statements to federally licensed firearms providers. So there's there's nothing in this record. Had these issues been raised below, then there would have been an opportunity to address. I know if the government that had ever articulated a reason for it other than this exercise of discretion, it does strike one that's not that's being, um, a tough response to a to a non cooperating witness. Uh, whatever. And these some of these facts legal legal footing for that is a different proposition. But just, you know, they should approach it. I don't know if the government that articulated a particular reason for that. There was never an opportunity to judge Higginbotham because the issue never came up as to why the government brought this case versus any other case. But I do think the facts on that are important. And and and I don't agree that that this case necessarily presents a compelling reason why we should not have prosecuted it. I understand that argument. And but I suppose that ineffective assistance, a council argument that you're trying to 55 that you just you suggest would be the procedural vehicle for developing that. And I'm not sure the government has done any obligation to offer an explanation for it. But I didn't know what they had. Um, there must be. It does strike one as a thing of maybe it's unusual. Well, I take issue with the idea that Miss Diaz complied with the cease and desist order. I don't think that's a fair conclusion from the facts that we have here. The cease and desist was provided on March 23rd. There was an agreement to meet two days later. That's a Friday to a Sunday. Um, the PSR reports that they scheduled a meeting on the 25th of March. And that afternoon, agents later found out they had already left the country. So there wasn't some period of time where they remained in the United States. And you're arguing now that the that the agreement, the cease and desist or contained with it, uh, your implicit or cooperation going forward. Is that does the agreement? Uh, does it say anything about that? Or where so this order just identifies that, um, describes what the law is in terms of purchasing firearms and contains language at the end that says continued activity without the required license could result in a recommendation for criminal prosecution. Uh, that's not a promise that we would never prosecute. It's not a representation by the United States Attorney's Office for one. Uh, and ATF agents certainly don't have the authority to make prosecutorial decisions in that context. Um, it's not a defense to the charge, and it doesn't say anything about requiring cooperation to to obtain the benefits of that. So it's not. It's not an immunity letter. It's not even a proper agreement that the government might enter into with an individual in this particular context. People are given the right and opportunity to cooperate in government investigations all the time. Some choose to do so. Some choose not to do so. There are benefits from doing so potential benefits from doing so. And the Diaz is made the choice here that instead of trying to cooperate with the government in some fashion, they chose to leave the country. There are cases from other circuits around the country. I've referred to them in my brief where on similar facts, the court is found. The appellate court has found no, uh, no problem, vindictiveness or selectiveness. The long case out of the Seventh Circuit's a good example of that. There, the defendant was arrested selling cocaine to an undercover FBI agent. He was given a chance to cooperate in some other corruption investigation, and he didn't out of a fear of reprisal. And, um, he raised vindictive and selective prosecution and the Seventh Circuit, at least said there's no right under the Constitution to refuse to cooperate. Um, and the constitutional protection against vindictiveness only kicks in when the government acts in response to the exercise of protected right. And that's not what occurred in this particular case. From the government's perspective, this court doesn't have to address the merits of the vindictive or selective prosecution arguments because it's waived by the plea agreement. It does not fit within any of the limited exceptions to the appellate waiver in the plea agreement, and it's waived by the unconditional guilty plea by the defendant. It's generally the rule that all non jurisdictional defects in the proceedings are below or waived when you enter into a guilty plea. And, uh, the appellant tries to get around that by pointing to the Blackledge Minna exception. Blackledge was a vindictive prosecution case, very different circumstances than what we have here. The defendant was charged with a misdemeanor, was convicted, exercised his right to appeal, and the government brought a felony charge against him. That's far cry from from the situation in this case. And the Supreme Court's more recent discussions of Blackledge and Minna in Broachy and in class, um, make it clear that the claims that survive have to be claims that could be decided on the existing record. That is the language that the Supreme Court used the existing record. And as this this argument is indicated, there are numerous factual issues related to the vindictive or selective prosecution claims because they weren't fleshed out below. If they've been brought, the government could have articulated reasons why it charged this case as opposed to other cases. The government wasn't presented the opportunity to do that. And so these claims can't be decided on the existing record. Um, and and and from the government's perspective, they are waived by the unconditional guilty plea. Um, and unless the court has other questions on the vindictive or selective prosecution, I'll turn to the question under Rehave and the extension of Rehave to prosecutions under 922 a six. Um, just as with vindictive and selective prosecution, this issue wasn't raised below, so it's reviewed for plain error. And this court has made clear repeatedly that an extension of law is not equal to clear or obvious error. Um, Miss Diaz was correctly informed of the essential elements of the offense. The factual resume states the elements of the 3 71 charge, which is the charge she actually pled guilty to. It also states the elements of the 9 22 a six charge, and she admitted to facts that established each of those. And I think it's important to point out that the instructions in the plea documents tracked the Fifth Circuit pattern instructions on these two particular points. Um, I'll also point out that this court of the Fifth Circuit pattern instructions were updated in June of 2019, just a few days after Rehave was decided in late June 2019. Um, the 9 22 G instructions certainly was changed to require proof of the knowledge of one status, making them a prohibited person. The instructions to 9 22 a six, though, were not updated to require proof that the defendant knew they were defrauding a federally licensed firearms dealer. So I don't think the appellant can prevail on plain error review first, because it's not clear and obvious. It's not error, and I'll come back to that. But it's not clear an obvious error, because, as the court's already pointed out, the Supreme Court said it's not taking a position on whether Rehave and the reasoning behind Rehave extends to prosecutions under any of the other provisions of 9 22. But this court has also said that even if Rehave were to extend, there's still a question as to whether this plea was knowing involuntary and to determine that the court could look beyond the factual resume to the precedence report to fair inferences from the evidence to it was a knowing involuntary plea. And what you have here is an individual who falsely signed numerous forms. The 44 73 A. T. F. Form. Those air federal forms. The forms make that clear. This court can take judicial notice of that. They acknowledge, even in their brief that nearly all, uh, firearms dealers are federally licensed. The precedence report identifies approximately 50 transactions and 160 firearms. So this is something I thought the indictment learns that the federal firearms dealer and guilty to that indictment. The indictment did allege a federally licensed firearms dealer, and she certainly did plead guilty to the count of the indictment that requires that and admitted in her factual resume that these were federally licensed firearms dealers. The challenge over whether she knows it, though, if we're a were to extend to 9 22 a six, I think is still established by the record that we have certainly on plain air of review. I don't think she can show that substantial rights were affected here that she would have, um, not entered into a plea agreement because ultimately that plea agreement was incredibly beneficial to her. She reduced her exposure down to five years, limited it to five years. Um, and she had a promise from the government that it would not prosecute her for other conduct. She was only charged with a couple of instances of making the false statement. But the evidence that she admitted to in a factual resume, certainly borne out by the precedence report is that she and her husband did this repeatedly over and over again, um, approximately 50 times, some of which she handled some of which he handled in 160 firearms. The factual resume also explains that identifies all the dealers. And we're talking about places like Academy Sports and Bass Pro Shop. I mean, big, uh, nationwide big box retailers. And so there's certainly a fair inference from the record that this court has before it that she knew she was defrauding federally licensed firearms dealers. Um, turning into the merits of that question, I don't. The government's laid out its position in its brief. Um, there's not any indication that the Supreme Court intended for Rehave to extend to 9 22 a six prosecutions. And when you dive into the merits of that issue, there are three reasons why that's the case. The first, the text of 9 22 a six is different than the text of 9 22 G. The status elements in 9 22 G don't have a mens rea attached to them. It's just Are you a felon? Are you an alien? Are you a drug user? And so when the court looked at that, they inferred or they applied a mens rea from 9 24 a two, which is the punishment provision. 9 24 a two says anyone who according to whatever 9 20 whatever 9 24 a two says up to 10 years. Um, and the court read that knowingly in a 9 24 a two over to 9 22 G and applied it to the status element. The problem with that approach as it relates to 9 22 a six is that 9 22 a six includes the knowledge element in the statute already. It includes that to be guilty of that offense. You have to knowingly make the false statement. It's not criminalizing people who accidentally or inadvertently make a false statement on a federal form. It's targeted at individuals who know that they are lying on the form as Miss Diaz and her husband pled guilty to here. Now, I grant you that 9 24 a two and its provision on punishment says anyone who knowingly violates 9 22 a six. So there is the similarity between the two statutes. But I think that big difference is that in 9 22 a six there is a mens rea built into the statute already. And one of the animating threads of the Supreme Court's decision and behave was this idea that, um, we applied mens rea in a way to draw a line between criminal and non criminal conduct. We separate people who violate the law knowingly and who violate the law accidentally. And, um, that knowledge draws the line. But the language of 9 22 a six includes the mens rea already, as I've already noted, the knowingly making the false statement. And then finally, in rehave, there certainly was discussion, and no one tried to suggest neither party even argued that the knowingly, uh, language in 9 24 a two would somehow be read to cover the jurisdictional element of 9 22 G, which is the youth possession or the transportation of the firearm in interstate commerce. It's never been held to require the government to prove a defendant knowing knows that the gun traveled in interstate commerce. Um, the federally licensed dealer component to 9 22 a six is a similar jurisdictional component to the interstate commerce language in 9 22 G. And so for that, there's not a basis to extend rehave and require the government to prove that a defendant knowingly, um, knew that the licensed dealer that they were purchasing the firearm from was a federally licensed dealer. So to wrap up, unless there are additional questions, I don't think that any of these issues, all of which were not raised below, none of them were raised below subject to plain air review and subject to the provisions of the plea agreement or the unconditional guilty plea really should even be addressed. But ultimately, if they are, there's no merit to the vindictive or selective prosecution claims, and there's no basis to extend rehave to prosecutions under 9 22 a six. And unless there further questions, I'll reserve the balance of my time. Thank you, Mr Larry. You save time for rebuttal. Thank you, Your Honor. The one thing I did want to point out on the selective prosecution point, Sylvia Diaz and Jose Diaz there. They're not one in the same. It's not that they are a married couple, but Jose was the person dealing with the agents. Sylvia was simply caught. The pre sense report said she was called over to the group just to let, and it's not as though she was there negotiating with ATF or that she even knew about this sting operation. It's she. There's no indication in this record that Sylvia failed to cooperate with the ATF at all, and she certainly complied with everything that was set out in the letter in the cease and desist letter. As far as I know, she's the only person who has ever been prosecuted for in this scenario. This is it. So the fact I respectfully disagree with my colleague on the issue of whether Miss Diaz failed to cooperate. She did not fail to cooperate. Jose, you could make an argument, but even Jose, all he did, he certainly cooperated. He gave them tons of information. The only thing he balked at was getting involved in their sting operation, and they never told them, Hey, you're gonna be indicted if you don't do this, or you're we're gonna prosecute you and your wife if you don't do this. That's not in this record at all. Sylvia certainly never had a choice. There's no indication here that she had a choice to refuse to cooperate with the government or that she even knew that the government would prosecute her for this stuff. Why 22 55 adequate to for you to pursue your desperately fact based claim? Well, Your Honor, I think number one, I think if you if you want additional information about this claim, I would hope that the court would vacate this issue rather than send her to a 22 55 scenario. Uh, you know, she she needs counsel. And and, uh, this is represented by appointed counselor. He's represented by appointed counsel. You're on. And, you know, I I really think there's a I've cited the Jones cases. I believe is it's the Jones case that indicated, uh, if there's a requirement for additional information on an ineffective assistance, uh, argument that you can you can vacate and remand for further findings on that issue. And that certainly would be appropriate here, I think. Um, the other thing is, I would really like to get her out on on on bail pending pending that hearing because she's in. She's got Cove it now. She's in Bryant, the camp down there in Bryant, Texas, and, uh, you know, suffering quite a bit. And I think she's got a very valid selective prosecution argument that would have barred this prosecution. So for those reasons, I would hope the court would seriously consider vacating the if it if it feels like we need to have additional information. Um, if there's any additional questions that the court has for me, I'll be happy to try to address them. But I think the briefs and the argument have basically laid everything out that I can think of. Yes. Thank you, Larry. The case is under submission, and we do notice that your court appointed, and we wish to your willingness to take the appointment and for your good work on behalf of your client. Thank you, Your Honor.